# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

| | |
|---|---|
| CHERRIE HAGERTY f/k/a CHERRIE STEVENS,<br><br>Plaintiff,<br><br>v.<br><br>ALLEVIATE FINANCIAL SOLUTIONS, LLC,<br><br>Defendant. | CIVIL COMPLAINT<br><br>CASE NO. 2:23-cv-00063<br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT

Now comes CHERRIE HAGERTY f/k/a CHERRIE STEVENS ("Claimant") by and through the undersigned, complaining as to the conduct of ALLEVIATE FINANCIAL SOLUTIONS, LLC ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.,* the Texas Credit Services Organizations Act ("TCSOA") under Tex. Fin. Code § 393.101 *et seq.,* and the Texas Consumer Debt Management Services Act ("TCDSMA") under Tex. Fin. Code § 394.201 *et seq.,* in connection with Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the CROA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the

action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

3.  Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business within, and a substantial portion of the events or omissions giving rise to the claims occurred within, the Northern District of Texas.

## PARTIES

4.  Plaintiff is a 55 year old consumer residing in Sunray, Texas, which lies within the Northern District of Texas.

5.  Defendant is a credit repair organization and debt settlement company representing its services as appropriate for those that cannot afford to pay off debt, want financial freedom, and need a "fresh start." [1] Defendant is a limited liability company organized under the laws of the state of California with its principal place of business located at 2323 Main Street, Irvine, California 92614.

6.  Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

7.  In approximately late 2019, Plaintiff was wanting some assistance in dealing with various obligations which were impacting her credit situation and began researching credit repair and debt management companies for assistance.

8.  Plaintiff subsequently happened upon Defendant.

---

[1] https://alleviatefinancial.com/

9. Defendant advised that Plaintiff could enroll a number of debts into its program, at which point Plaintiff would make monthly payments to Defendant, who would in turn use such funds for the purpose of assisting Plaintiff in resolving her enrolled debts obligations.

10. Defendant repeatedly represented the efficacy of its services and affirmatively represented that the desired results would be delivered and Claimant's credit would improve as a result as she would have a fresh start.

11. Defendant further represented that Plaintiff would be able to settle the enrolled debt for substantially less than what was owed at the time of enrollment, which would save Plaintiff substantial sums of money when trying to address her enrolled debts.

12. Defendant's services were offered for the explicit and implicit purpose of improving Plaintiff's credit as it was designed to reduce the overall debt load impacting Plaintiff's credit.

13. Believing that, by signing up for Defendant' services, Plaintiff would have her enrolled debts addressed and her monthly payments going towards resolving those debts, which would in turn provide her a fresh start on her credit, Plaintiff entered into a contract for the provision of Defendant's services.

14. Plaintiff began making payments of over $300.00 per month, which were represented as going towards resolving Claimant's enrolled debts.

15. Plaintiff persisted in making her payments for many months; however, Defendant failed to deliver the results or provide the services in the manner represented.

16. Throughout the life of the parties' dealings, Plaintiff would request status updates on Defendant's progress, and Defendant would persistently provide Plaintiff the runaround advising that results would be delivered soon.

17. However, despite Plaintiff making thousands in payments to Defendant, Defendant failed to meaningfully deliver any results or resolve the obligations in the manner initially represented.

18. In fact, rather than deliver any benefit to Claimant's credit or provide any sort of "fresh start," Defendant's program caused Claimant's credit to be ruined.

19. Upon information and belief, Defendant made the deceptive representations regarding the nature and efficacy of its services so as to induce Plaintiff and consumers to utilize Defendant's services, and continue utilizing Defendant's services, despite Defendant knowing it cannot follow through on the results and promises made to prospective and current customers.

20. Upon further information and belief, Defendant repeatedly and routinely assessed various fees against Plaintiff in connection with services it had not performed or fully performed.

21. Defendant's conduct in inappropriately diverting sums from Claimant's monthly payments took money that should have gone to Claimant's creditors and put it in the hands of Defendant.

22. Defendant's conduct in diverting funds in this manner is part of Defendant's fraudulent attempt to decrease the available sums available for settlement, in turn lengthening the time frame consumers have to make payments to Defendant, thus allowing Defendant more time to continue charging inappropriate fees under the guise of providing services that will completely fix consumers' credit.

23. Due to Defendant's failure to deliver any services or results despite Plaintiff making thousands in payments, Plaintiff had difficulty keeping up her mortgage given her diversion of payments to Defendant.

24. Plaintiff subsequently cancelled her agreement with Defendant, and Defendant failed to refund Plaintiff for charges and fees assessed in connection with services Defendant ultimately failed to perform.

25. Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with the undersigned regarding her rights.

26. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendant for deficient credit repair services, as well as numerous violations of her state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations.

### COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

27. Plaintiff repeats and realleges paragraphs 1 through 23 as though fully set forth herein.

28. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

29. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

    a. **Violations of CROA § 1679b(a)**

30. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing],

5

directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

31. Defendant violated the above references provisions of the CROA through the generally deceptive and misleading nature in which it held out its services to Claimant. Defendant promised Plaintiff that its program and partnerships would result in all of Claimant's debts being resolved and addressed; however, Defendant failed to meaningfully perform the services it represented it would perform.

32. Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it was providing Claimant. Defendant inherently represented that, so long as Plaintiff made her monthly payments to Defendant, Defendant would actively be working to resolve the enrolled debts. Defendant similarly explicitly informed Plaintiff that it was working to address the obligations. However, despite Plaintiff making thousands in monthly payments to Defendant, Defendant failed to address the debts in the manner it represented. When Plaintiff would ask for updates on Defendant's workings, Defendant simply persisted in giving Plaintiff the runaround without achieving the desired results. Upon information and belief, Defendant engages in this conduct on a wide and frequent basis in furtherance of its own bottom line. Plaintiff has suffered significant damages as a result of Defendant's conduct.

33. Defendant further violated the above provisions of the CROA through its deceptive and misleading representations regarding the savings consumers can experience through using its services. Defendant represents that consumers can save significantly through Defendant's services. However, Defendant's undisclosed fees and failure to act promptly results in the savings

consumers actually experience being substantially less than what was represented by Defendant. Defendant engages in this deceptive and misleading conduct in order to convince consumers to use its services by promising unrealistic outcomes. That consumers only become wise to Defendant's deception until thousands in payments have been made only further demonstrates the egregious and fraudulent nature of Defendant's conduct.

34. Defendant further violated the above provisions of the CROA through its deceptive representations regarding the efficacy of its services. Defendant promised results and that its services were better than its competitors and would save Plaintiff more; however, Plaintiff was put in a significantly worse financial position after using Defendant's services than she would have been had she done things herself. Defendant's deceptively represents the efficacy of its services and the nature of its expertise so as to convince consumers to pay it thousands of dollars to achieve results anyone could achieve, let alone Defendant's more reputable competitors.

35. Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the fees that would be assessed in connection with the services offered. Defendant suggested to Plaintiff that her payments would go towards resolving her obligations; however, Defendant deceptively omitted the fact that there would be extensive charges for various fees and services that were not properly explained to Claimant, including the fees charged by Defendant. Defendant's conduct was designed to convince Plaintiff that utilizing Defendant' services would be beneficial and result in substantial savings, while failing to mention any information that would make Plaintiff rethink the appropriateness of Defendant' program.

36. Defendant further violated the above provisions of the CROA through its fraudulent and deceptive conduct in making certain representations to induce consumers to use its services, only

to cut against those representations in its contract with consumers. Defendant's inclusion of an integration clause further illustrates the extent to which Defendant is seeking to insulate itself from liability for the manner in which it markets its services to consumers.

37. Defendant further violated the CROA through its deceptive representations regarding the impact its services have on consumer's credit. Defendant promised Plaintiff that her credit would improve but their services only resulted in Claimant's credit being ruined.

    b. **Violation of CROA § 1679b(b)**

38. The CROA, pursuant to 15 U.S.C. § 1679b(b), states that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

39. Defendant violated § 1679b(b) as they charged and received money from Plaintiff in exchange for the performance of services before such services were fully performed. Defendant charged Claimant, and Defendant received, consideration from Plaintiff on an upfront basis before any services were performed. Furthermore, throughout the life of their dealings, Defendant routinely charged Plaintiff fees or otherwise caused service fees to be created for services before such services were fully performed. Similarly, Defendant failed to refund Plaintiff for fees and charges assessed for services it never performed upon Claimant's cancellation of her agreement with Defendant.

    c. **Violation of CROA § 1679c**

40. The CROA, pursuant to 15 U.S.C. § 1679c, outlines various disclosures that CROs must provide to consumers prior to entering into contracts with consumers.

41. Defendant violated § 1679c through their complete failure to provide Plaintiff the required disclosures or a copy required disclosures.

### d. Violation of CROA § 1679f(b)

42. The CROA, pursuant to 15 U.S.C. § 1679f(b) provides that, "[a]ny attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under [the CROA] shall be treated as a violation of [the CROA]."

43. Defendant violated 15 U.S.C. § 1679f(b) through their attempt to obtain Claimant's waiver of the protections afforded her under the CROA. Defendant' contracts contain numerous efforts to obtain a waiver of Claimant's vital consumer protection rights protected by the CROA, including but not limited to an attempt to obtain a waiver of Claimant's right to assert claims for the manner in which Defendant marketed its services to consumers.

44. The CROA further dictates that any contract found not to be in compliance with the CROA "shall be treated as void" and "may not be enforced by any Federal or State court or any other person." 15 U.S.C. § 1679f(c).

WHEREFORE, Claimant, CHERRIE HAGERTY, respectfully requests that the Honorable Court enter judgment in her favor as follows:

    a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

    b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

    c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

    d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

    e. Awarding any other relief as the Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE TEXAS CREDIT SERVICES ORGANIZATION ACT

45. Plaintiff restates and realleges paragraphs 1 through 44 as though fully set forth herein.

46. Plaintiff is a "consumer" as defined by Tex. Fin. Code § 393.001(1).

47. Defendant is a "credit services organization" as defined by Tex. Fin. Code § 393.001(3).

    a. **Violations of Tex. Fin. Code §§ 393.201**

48. The TCSOA, pursuant to Tex. Fin. Code § 393.201, outlines certain requirements of the contracts entered into between consumers and credit services organizations. § 393.202 discusses the nature of a consumer's right to cancel contracts and how such right must be disclosed to consumers.

49. Defendant violated §§ 393.201(b)(1)-(4) & 393.202 through their failure to provide the information required under Texas law in the contract with Claimant. Defendant's contract fails to contain the requisite information.

    b. **Violations of Tex. Fin. Code § 393.302**

50. The TCOSA, pursuant to Tex. Fin. Code § 393.302, prohibits credit service organizations from receiving money for their services before such services are fully performed.

51. Defendant violated § 393.302 in much the same way it violated § 1679b(b) of the CROA.

    c. **Violations of Tex. Fin. Code §§ 393.304(1) & 393.305**

52. The TCSOA, pursuant to Tex. Fin. Code § 393.304(1), prohibits a credit services organization from "mak[ing] or us[ing] a false or misleading representation in the offer or sale of the services of the organization." Similarly, pursuant to Tex. Fin. Code § 393.305, "[a] credit services organization or a representative of the organization may not directly or indirectly engage in a fraudulent or deceptive act, practice, or course of business relating to the offer or sale of the services of the organization."

53. Defendant violated §§ 393.304(1) & 393.305 in much the same way it violated §§ 1679b(a)(3)-(4) of the CROA.

### d. Violations of Tex. Fin. Code § 393.307

54. The TCSOA, pursuant to Tex. Fin. Code § 393.307, provides that "[a] credit services organization may not attempt to cause a consumer to waive a right under this chapter."

55. Defendant violated § 393.307 through their attempts to obtain a waiver of Claimant's rights afforded her under the TCSOA.

WHEREFORE, Claimant, CHERRIE HAGERTY, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Tex. Fin. Code § 393.503(a)(1);

c. Awarding Plaintiff punitive damages pursuant to Tex. Fin. Code § 393.503(b);

d. Enjoin Defendant from further violations of law pursuant to Tex. Fin. Code § 393.502,

e. Awarding Claimant's costs and reasonable attorney fees, pursuant to Tex. Fin. Code §§ 393.503(a)(2)-(3); and,

f. Awarding any other relief the Honorable Court deems just and appropriate.

## COUNT III – VIOLATIONS OF THE TEXAS CONSUMER DEBT MANAGEMENT SERVICES ACT

56. Plaintiff restates and realleges paragraphs 1 through 55 as though fully set forth herein.

57. Plaintiff is a "consumer" as defined by Tex. Fin. Code § 394.202(4).

58. Defendant is a "provider" of "debt management service" as defined by Tex. Fin. Code §§ 394.202(6) & (10).

### a. Violations of Tex. Fin. Code § 394.207

59. The TCDMSA, pursuant to Tex. Fin. Code § 394.207, provides that "[a] provider may not engage in false or deceptive advertising,"

60. Defendant violated § 394.207 in much the same way its deceptive representations regarding the nature of, and fees surrounding, its services violated § 1679b(a)(3)-(4) of the CROA.

### b. Violations of Tex. Fin. Code § 394.209

61. The TCDMSA, pursuant to Tex. Fin. Code § 394.209, outlines the various requirements of the contracts entered into between debt management providers and consumers.

62. Defendant violated § 394.209(b) through its failure to include the required statements, disclosures, and information in its contract with Claimant.

### c. Violations of Tex. Fin. Code § 394.210

63. The TCDMSA, pursuant to Tex. Fin. Code § 394.210(c), provides that "[a] provider may not impose fees or other charges upon a consumer or receive payment for debt management services until the consumer has entered into a debt management service agreement with the provider that complies with Section 394.209."

64. Defendant violated § 394.210(c) through its charging of Plaintiff for its debt management services without entering into a contract which complies with Texas law.

### d. Violations of Tex. Fin. Code § 394.212

65. The TCDMSA, pursuant to Tex. Fin. Code § 394.212, outlines a number of prohibited practices on the part of providers.

66. Pursuant to § 394.212(a)(9), a provider may not "engage in an unfair, deceptive, or unconscionable act or practice in connection with a service provided to a consumer."

67. Defendant violated § 394.212(a)(9) through the deceptive and unfair nature of the representations made to Plaintiff and manner in which its services were subsequently provided.

68. Pursuant to § 394.212(c)(2), a provider is prohibited from including in its contract with a consumer "a waiver of the right to a jury trial, if applicable, in an action brought by or against a consumer."

69. Defendant violated § 393.212(c)(2) through its inclusion of jury trial waiver in its debt settlement agreement.

  e. **Violations of Tex. Fin. Code § 394.213**

70. Pursuant to § 394.213, "a provider has a duty to a consumer who receives debt management services from the provider to ensure that client money held by the provider is managed properly at all times."

71. Defendant violated § 394.213 through its failure to ensure that Claimant's money was managed properly. As discussed above, Defendant failed to meaningfully perform the services it represented, and similarly allowed Claimant's funds to be mismanaged and applied to unnecessary fees for services which were never actually performed.

WHEREFORE, Claimant, CHERRIE HAGERTY, respectfully requests that the Honorable Court enter judgment in her favor as follows:

 a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

 b. Awarding Plaintiff actual damages pursuant to Tex. Fin. Code § 394.215(c);

 c. Awarding Plaintiff punitive damages pursuant to Tex. Fin. Code § 394.215(c);

 d. Enjoin Defendant from further violations of law pursuant to Tex. Fin. Code § 394.215(d);,

 e. Awarding Claimant's costs and reasonable attorney fees, pursuant to Tex. Fin. Code § 394.215(c); and,

 f. Awarding any other relief the Honorable Court deems just and appropriate.

Dated: April 10, 2023                      Respectfully submitted,

                                                      <u>s/ Nathan C. Volheim</u>
                                                      Nathan C. Volheim, Esq. #6302103
                                                      *Counsel for Plaintiff*
                                                      Sulaiman Law Group, Ltd.
                                                      2500 South Highland Ave., Suite 200
                                                      Lombard, Illinois 60148
                                                      (630) 568-3056 (phone)
                                                      (630) 575-8188 (fax)
                                                      nvolheim@sulaimanlaw.com